UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ANDREA WIREN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE HEIL CO., )<br>d/b/a HEIL ENVIRONMENTAL )<br>INDUSTRIES, LTD., )<br>)<br>Defendant. ) | No. 1:03-CV-229<br><br>Judge Curtis L. Collier |

## **M E M O R A N D U M**

Before the Court in this employment discrimination case is a motion for new trial filed by Plaintiff Andrea Wiren ("Plaintiff") (Court File No. 97). Plaintiff filed a memorandum in support of her motion (Court File No. 98), Defendant The Heil Co., d/b/a Heil Environmental Industries, Limited ("Defendant") filed a response in opposition (Court File No. 99), but Plaintiff did not file a reply brief. For the reasons stated herein the Court will **DENY** Plaintiff's motion.

**I.      STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a court may set aside a jury verdict and grant a new trial "to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). Courts have generally interpreted this language to allow a new trial when a jury has reached a "seriously erroneous result," which may occur when (1) the verdict is against the

weight of the evidence; (2) the damages awarded are excessive; or (3) the trial was unfair to the moving party in some fashion (*i.e.*, the proceedings were influenced by prejudice or bias). *See Holmes v. City of Massillon,* 78 F.3d 1041, 1045-46 (6th Cir. 1996); *Browne v. Signal Mountain Nursery,* 286 F. Supp. 2d 904, 908 (E.D. Tenn. 2003). The burden of demonstrating the necessity of a new trial is on the moving party, *Clarksville-Montgomery County Sch. Sys v. U.S. Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991), and the ultimate decision whether to grant such relief is a matter vested within the sound discretion of the district court. *See Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996); *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (limiting a court's responsibility to preventing an injustice).

## II. RELEVANT FACTS

Defendant is a Delaware corporation engaged in the manufacture and sale of garbage trucks with its corporate headquarters located in Chattanooga, Tennessee. On May 24, 1999, Defendant hired Plaintiff as a telemarketing employee in the "Inside Sales" office located in Chattanooga. In 2000, Plaintiff was promoted to the position of Ready Truck Sales Coordinator in the Ready Truck Sales Department. In November 2000, Plaintiff and her husband began attempting to conceive a child, a process which ultimately involved Plaintiff undergoing surgery, fertility treatments, and in vitro fertilization procedures. Sometime in late July 2002, Plaintiff informed her supervisor, Steve Dupuis, of her attempts to become pregnant. Defendant terminated Plaintiff's employment on September 3, 2002, purportedly in connection with a company-wide reduction in force necessitated by the company's financial condition.

On June 4, 2003, Plaintiff filed the present action in Hamilton County (Tennessee) Chancery

Court asserting claims for pregnancy and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act, and the Tennessee Human Rights Act ("THRA") (Court File No. 1, Complaint). Defendant promptly removed the case to this Court and eventually filed a motion for summary judgment (Court File No. 25). The Court denied that motion (Court File Nos. 45, 48) and the case proceeded to trial. The parties filed a number of motions in limine (Court File Nos. 36, 37, 38, 39, 40, 41, 42, 43, 44, 47) in the weeks and months leading up to trial, some of which the Court ruled upon prior to trial and some of which the Court elected to defer ruling (Court File Nos. 71, 72). The jury trial of this matter commenced on December 13, 2004, and continued intermittently over a total of four trial days. On January 11, 2005, the jury returned a verdict in favor of Defendant (Court File Nos. 93, 94). Plaintiff filed the instant motion for new trial on January 27, 2005.

### III. **DISCUSSION**

Plaintiff contends a new trial is warranted based upon eleven asserted grounds. Specifically, Plaintiff claims: (1) there was no evidence to support the jury's verdict; (2) the verdict was contrary to the weight of the evidence; (3) the trial was unfair to Plaintiff and substantially prejudiced her; (4) the Court erred in permitting Defendant to refer to the fact Plaintiff won the lottery following her termination; (5) the Court erred in permitted Defendant to present evidence of purchases made by Plaintiff following her termination; (6) the Court erred in excluding evidence of certain statements by her supervisor, Steve Dupuis; (7) the Court erred in permitting Defendant to present evidence regarding the disposition of another employment discrimination lawsuit against Defendant; (8) the Court erred in excluding evidence of compensation paid by Defendant to Jack Danner and

3

Glenn Chambers; (9) the Court erred in excluding evidence of facts regarding the termination of two other women; (10) the Court erred in excluding evidence of Defendant's treatment of a particular male employee; and (11) the Court erred in permitting Kevin Coombes to testify (*see* Court File No. 97). Plaintiff does not provide any independent arguments as to why her first three propositions are present in this case, but rather appears to contend the eight points of error in the Court's evidentiary rulings operate to render the jury's verdict the sort of "seriously erroneous result" which necessitates a new trial. Accordingly, the Court will address each of these issues in turn taking the eight asserted errors first.

**A.      Admission of Lottery Evidence**

Prior to trial, Plaintiff filed a motion in limine seeking to prevent Defendant from introducing any evidence relating to her win in the Georgia lottery in July 2002 and any proceeds she derived as a result (Court File No. 47). The Court denied this motion upon finding such evidence could potentially be relevant to damages in light of Defendant's assertions Plaintiff's performance declined after she won the lottery and based on her good fortune she had "made it known . . . she planned on quitting work as soon as she became pregnant or by the end of the year, whichever came first" (Court File No. 71, p. 15). At trial, Defendant presented proof Plaintiff had commented to coworkers she was planning to leave the company in order to start her own business, that she would leave as soon as she became pregnant, and if Defendant was going to be conducting layoffs she hoped to be first. Thus, evidence of Plaintiff's lottery winnings and the impact of such good fortune on Plaintiff's future intentions was clearly relevant to damages in this case and might well have also been relevant to suggest Defendant's decision to terminate Plaintiff was based upon her own expressed desires and intentions rather than any discriminatory animus. However, defense counsel's

4

characterization of the instant action as Plaintiff's "second lottery ticket" was unnecessary and tended to focus the jury's attention on prejudicial and irrelevant aspects of this evidence. Nonetheless, any prejudice which may have resulted was not so egregious or unfair as to substantially outweigh the probative value of the lottery evidence. *See* Fed. R. Evid. 403.

**B.     Evidence of Plaintiff's Purchases**

Next, Plaintiff contends the Court erred in overruling her objections to Defendant's attempt to introduce evidence of large purchases made by Plaintiff following her termination, most significantly the purchase of a new home. In her complaint Plaintiff sought damages for pain, suffering, and humiliation, and it was her contention some of this mental anguish resulted from her husband's having to work overtime following her termination. As such, evidence of Plaintiff's substantial purchases are relevant to damages in that they provide an alternative explanation for some of the financial stress from which Plaintiff claimed to be suffering. Further, Plaintiff's post-termination financial decisions cast some doubt on the credibility of such claims in the first place. Although Plaintiff's post-injury expenditures might be irrelevant and even prejudicial considered in isolation, in this case Plaintiff opened the door to such evidence due to the nature of her pain and suffering allegations. The Court finds no error in its previous ruling.

**C.     Allegedly Discriminatory Statements by Steve Dupuis**

Prior to trial, Defendant filed a motion in limine seeking to exclude evidence of allegedly discriminatory remarks made by a number of Defendant's employees who Defendant claimed were not responsible for Plaintiff's termination (Court File No. 43). The Court granted that motion with respect to most of the comments identified by Defendant, but reserved ruling as to the admissibility of comments allegedly made by Steve Dupuis, Plaintiff's supervisor (Court File No. 71, pp. 11-14).

5

Specifically, Dupuis is alleged to have told Plaintiff he thought women should stay at home with their children and told a meeting of fellow employees Plaintiff was trying to become pregnant and would probably quit. The Court concluded such could potentially be relevant as circumstantial evidence of discrimination if Plaintiff could establish Dupuis had some influence over or participation in the decision to terminate Plaintiff. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) ("If the employee can demonstrate others had influence or leverage over the official decisionmaker . . . it is proper to impute their discriminatory attitudes to the formal decisionmaker."). At trial, with the benefit of a complete record and full factual context, the Court ultimately found Dupuis' statements inadmissible. Plaintiff now maintains this evidence was relevant and probative and the Court erred in excluding it. However, no evidence was presented at trial which suggested Dupuis was a decision maker or had any influence over the decision making process. Although prior discriminatory acts or comments by non-decision makers may be admissible to support an inference of discrimination, there must exist some logical or reasonable basis for connecting the alleged previous discriminatory actions or comments to the plaintiff's treatment and/or the adverse employment action. *See Robinson v. Runyon*, 149 F.3d 507, 513-14 (6th Cir. 1998) (holding evidence showing co-employees circulated fake employment application incorporating racial stereotypes was relevant where plaintiff showed upper management knew of the application, but did not condemn it); *Williams v. Nashville Network*, 132 F.3d 1123, 1129-30 (6th Cir. 1997) (holding plaintiff could not support racial discrimination claim with evidence another African-American had applied for a different position with different qualifications and hiring requirements and been rejected six years before); *Schrand v. Fed. Pacific Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (holding evidence other employees of a national corporation were subject to

6

unlawful discrimination not relevant to plaintiff's discrimination claim where plaintiff worked in a different region, division, and office, and under a different supervisor). Here, Plaintiff did not present any evidence the decision maker, Jim McKee, ever consulted Dupuis in any way during the decision making process or that the two otherwise discussed Plaintiff's condition or pregnancy in general. Accordingly, because Plaintiff had failed to establish a foundation for the relevance of any discriminatory remarks allegedly made by Dupuis, the Court did not err in excluding such comments from evidence.

**D.     Evidence of Disposition of Michelle Ingram's Case Against Defendant**

Next, Plaintiff argues the Court erred overruling her objection to Defendant's questioning of Michelle Ingram about the disposition of her own gender and pregnancy discrimination claim against Defendant. Ingram worked as a secretary in Defendant's sales department and was terminated at approximately the same time as Plaintiff. Plaintiff called Ingram as a witness to testify about discriminatory remarks allegedly made by McKee and her own experience with alleged discrimination. On cross-examination, the Court allowed Defendant to ask Ingram about the disposition of her discrimination lawsuit (another judge of this district had granted summary judgment in favor of Defendant). The existence of Ingram's lawsuit was certainly relevant to her credibility as a witness and its then-recent disposition was similarly relevant in that it pointed to a potential source of bias or animosity against Defendant. Plaintiff suggests defense counsel improperly encouraged the jury to infer from the court's ruling in Ingram's case that Plaintiff's claims were also without merit, but the Court does not recall any such argument or suggestion. The evidence itself was relevant to Ingram's credibility and there is no indication the jury considered the evidence for any improper purpose.

**E. Evidence of Compensation Paid to Jack Danner and Glenn Chambers**

Prior to trial, Defendant filed a motion in limine seeking to prevent Plaintiff from introducing evidence of severance payments made to certain executive employees upon their separation from employment with Heil, specifically former company president Glenn Chambers and former Director of Human Resources Jack Danner (Court File No. 41). The Court granted this motion, finding Chambers and Danner were not similarly situated to Plaintiff, therefore, the nature of their severance packages were not probative of unlawful discrimination (Court File No. 71, pp. 8-10). Plaintiff claims this ruling was in error and reiterates the arguments previously advanced in her response to Defendant's motion in limine. Plaintiff has still not articulated any basis upon which she, an administrative employee with less than four years of service, could be deemed similarly situated to Chambers and Danner, both of whom were executive employees with terms of service in excess of twenty-three years. To the extent Plaintiff contends the allegedly "lucrative" packages given Chambers and Danner are inconsistent with Defendant's purported cost-saving motivation, the Court notes there is no evidence in the record indicating Defendant's actions with respect to Chambers and Danner did not result in at least some marginal cost savings and even assuming they did not, it is neither the Court nor the jury's province to review Defendant's business decisions or question the soundness of its judgment. *See Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986); *see also Jones v. Delphi Packard Elec. Sys.*, 208 F.3d 213, 2000 WL 282896, *1 (6th Cir. March 13, 2000) (unpublished table opinion).

**F. Evidence of Termination of Jennifer Suits**

In a motion in limine, Defendant sought to preclude Plaintiff from introducing any evidence of discriminatory treatment of persons other than Plaintiff, including Jennifer Suits and Michelle

8

Ingram (Court File No. 40). The Court granted the motion with respect to Suits and various other women, but denied it with respect to Ingram (Court File No. 71, pp. 6-8). Plaintiff now contends the Court erred in excluding evidence of discrimination against Suits, thus depriving her of the opportunity to demonstrate to the jury the only persons Defendant actually terminated during the purported reduction in force were three women (Plaintiff, Suits, and Ingram), all of whom were either pregnant or trying to become pregnant. The Court excluded evidence of alleged discrimination against Suits because Plaintiff had not established any logical or reasonable basis for connecting those alleged previous discriminatory actions with her own treatment. At no time since has Plaintiff come forward with any such evidence. Plaintiff has never so much as suggested Suits' treatment and her own had any connection other than both having taken place during the same general time period and purportedly due to the same discriminatory motivation. No evidence has been presented indicating McKee or anyone else associated with the decision to terminate Plaintiff had any involvement in or knowledge of the decision to terminate Suits or vice versa. Since Plaintiff and Suits were terminated based upon actions by different and independent decision makers, the circumstances of Suits termination do not make it any more or less likely Plaintiff was terminated as a result of discriminatory animus.

Plaintiff attempts to place the Suits evidence in the larger context of her attempt to discredit Defendant's claim of having terminated Plaintiff in accordance with a company-wide reduction in force. According to Plaintiff, it was error for the Court to have precluded Plaintiff from challenging the validity of the purported reduction in force by examining the facts surrounding Suits' termination while simultaneously allowing Defendant to introduce evidence of contemporaneous terminations in other offices. However, Plaintiff does not appear to appreciate that even assuming it was

9

undisputed Suits was terminated based entirely upon her pregnancy, that fact would have no relevance whatsoever to the issues of whether a distinct and independent decision maker in a separate department discriminated against Plaintiff or whether Defendant actually conducted a company-wide reduction in force. Defendant's company-wide employment actions were relevant to the question of whether a legitimate reduction in force had been undertaken and any discrimination against Suits was irrelevant because there was no logical or reasonable basis for connecting those actions with Plaintiff's own treatment.

**G.     Evidence of Treatment of Jack Danner**

Plaintiff next argues the Court erred in excluding evidence of the allegedly "excessive" severance package given Jack Danner upon his termination. However, the Court is unable to discern any distinction between this point of error and that previously discussed *supra* in § III.E. Accordingly, the Court finds no error for the same reasons set forth therein.

**H.     Testimony of Kevin Coombes**

Next, Plaintiff contends the Court erred in permitting Kevin Coombes to testify. Coombes was formerly employed by Defendant as Export Group Manager and Defendant called him to testify to the effect he was terminated in conjunction with the 2002 reduction in force which also claimed Plaintiff's job. Plaintiff contends it was erroneous for the Court to allow this testimony since the Court had precluded Plaintiff "from introducing evidence relating to other employees [sic] terminations, including Jennifer Suits" (Court File No. 98, p. 9). However, the Court never precluded Plaintiff (or Defendant) from introducing any evidence relating to whether a particular employee was or was not terminated in connection with Defendant's claimed reduction in force. Such evidence was clearly relevant in light of Plaintiff's contention Defendant had not, in fact, been

10

engaged in a financially motivated workforce reduction. As explained *supra* in § III.F, what the Court prohibited was the introduction of any evidence relating to the specific circumstances and conditions under which particular employees *subject to decision makers other than Jim McKee* were selected for termination and/or reduction. Plaintiff's allegations made the legitimacy of Defendant's reduction in force a central issue of fact, therefore, Defendant was entitled to call Coombes and other employees to testify as to the existence of such a reduction and its impact on their employment with Defendant.

**I.      Need for New Trial**

Plaintiff's motion asserts three general grounds warranting a new trial: (1) insufficiency of the evidence, (2) the verdict was contrary to the weight of the evidence, and (3) the trial was unfair and prejudicial to Plaintiff. Plaintiff does not specifically explain why she believes there was insufficient evidence to support the jury's verdict as a matter of law, which in any event would be a highly extraordinary situation in a case involving a defense verdict. Nor does Plaintiff explain why she believes the jury's verdict was against the weight of the evidence. When ruling on a new trial motion claiming the verdict was against the weight of the evidence, the district court should "'compare the opposing proofs and weigh the evidence.'" *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000) (quoting *Toth v. Yoder Co.*, 749 F.2d 1190, 1197 (6th Cir. 1984)); *see also J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). The Court should deny the motion and leave the jury's verdict undisturbed so long as it "could reasonably have been reached." *See Conte*, 215 F.3d at 637-38. A jury's verdict "should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *J.C. Wyckoff*, 936 F.2d at 1487. Rather, the Court

must compare the offered evidence and set aside the jury's verdict only if it is against the clear weight of the evidence as a whole. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 818 (6th Cir. 1999) (citing *Tobin v. Astra Pharm. Prod.*, 993 F.2d 528, 541 (6th Cir. 1993)). Plaintiff has not articulated exactly how the jury's verdict ran contrary to the evidence and the Court is unable to reach such a conclusion based upon its recollection of the evidence and review of the record.

Finally, Plaintiff appears to contend the eight asserted errors committed by the Court in its evidentiary rulings before and during trial operated either independently or collectively to have rendered the trial fundamentally unfair to Plaintiff's substantial prejudice. As detailed above, the Court finds no error in any of the evidentiary rulings pointed to by Plaintiff. Although the Court concedes some unfair prejudice may have resulted from defense counsel's unnecessary characterization of Plaintiff's motives in bringing the instant action, such prejudice cannot be said to qualify as the sort of injustice necessitating a new trial. *See Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (limiting a court's responsibility on new trial motion to preventing an injustice).

## IV. CONCLUSION

For the reasons stated above, the Court finds no error in its previous evidentiary rulings and no basis for vacating the jury's verdict and ordering a new trial. Accordingly, the Court will **DENY** Plaintiff's motion for a new trial (Court File No. 97).

An Order shall enter.

                                           **/s/**
                              **CURTIS L. COLLIER**
                    **UNITED STATES DISTRICT JUDGE**